UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUREUS HOLDINGS, LTD. and
DONALD SCHULTZ,

    Plaintiffs,

                                                    Case No. 03-75126

-vs-                                                   Hon: AVERN COHN

JAMES DOCKERY,

    Defendant.

_____/

## MEMORANDUM AND ORDER
## DENYING PLAINTIFFS' MOTION FOR NEW TRIAL

I.

This is a civil rights case under 42 U.S.C. § 1983 with pendent state law claims. On July 23, 2007, following a five (5) day trial, a jury returned a verdict in favor of defendant and against plaintiffs on the following claims:

- Aureus Holdings, Ltd.   -   malicious prosecution
  -   -   tortious interference with business expectancies

- Donald Schultz   -   violation of constitutional rights in seizing a shotgun
  -   -   malicious prosecution

Now before the Court is plaintiffs' motion for new trial on the following grounds:

- the verdict against Schultz on his claim regarding the seizure of his shotgun was against the clear weight of the evidence

- the verdict against Schultz and Aureus on their claims for malicious

> prosecution was against the clear weight of the evidence

- the verdict against Aureus on it claim for tortious interference with business expectancy was against the clear weight of the evidence

- Schultz was entitled to go to the jury on his claim for punitive damages on the shotgun claim

- Schultz was entitled to go to the jury on his claim for intentional and negligent infliction of emotional distress

- Schultz and Aureus were entitled to go to the jury on their claims for violation of equal protection

For the reasons which follow, the motion is DENIED.

II.

The background of the case and the issues which were tried to the jury are described in the Memorandum and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, filed June 1, 2006, as well as in the Joint Final Pretrial Order approved February 6, 2007. Essentially, Aureus operated a scrap metal processing yard in the City of Detroit. Schultz was employed by non-party E & M Transportation, Inc. at the scrap yard to supervise its trucks and drivers delivering scrap metal to the yard. Dockery is a City of Detroit police officer assigned to environmental enforcement, who issued a series of citations to plaintiffs for violation of various City of Detroit ordinances.

Aureus and Schultz filed a multi-count complaint against Dockery, the City of Detroit Police Department (later dismissed by stipulation), and the City of Detroit. Following dispositive motions filed by the City of Detroit (which was dismissed) and Dockery, the case went to trial against Dockery on the following claims:

- Schultz's § 1983 claim regarding the shotgun

- Schultz and Aureus' claims for malicious prosecution

- Aureus' claim for tortious interference with its business

- Schultz's claim for intentional and negligent infliction of emotional distress

- Schultz's and Aureus' § 1983 claim for violation of their 14th Amendment right to equal protection

At the conclusion of plaintiffs' proofs, the Court granted Dockery's motion for judgment as a matter of law under Rule 50 on Schultz's emotional distress claims and plaintiffs' equal protection claims.

III.

A.

Under Fed Rule Civil Procedure 59(a), a court may grant a motion for a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The rule has been construed as encompassing such grounds as a verdict against the clear weight of the evidence, an inconsistent verdict, an excessive award of damages, an error of law during the trial, prejudicial misconduct by the court, opposing counsel, or a juror that deprived the moving party of a fair trial. See Robert E. Jones, et al., Fed. Civil Trials & Evidence, Ch. 20, ¶¶20:100-243 (2001 ed.). As one commentator has explained:

> It may be doubted whether there is any verbal formula that will be of much use to trial courts in passing on motions of the type now being considered. Necessarily all formulations are couched in broad and general terms that furnish no unerring litmus for a particular case. On the other hand, the trial judge does not sit to approve miscarriages of justice. The judge's power to set aside the verdict is supported by clear precedent and common law and far from being a denigration or a usurpation of a jury trial, has long been regarded an integral part of trial by jury as we know it. On

3

the other hand, a decent respect for the collective wisdom of
the jury, and for the function entrusted to it in our system,
certainly suggests that in most cases the judge should
accept the findings of the jury, regardless of his own doubts
on the matter.  Probably all that the judge can do is balance
these conflicting principles in the light of the facts of the
particular case.  If, having given full respect to the jury's
findings, the judge on the entire evidence is left with the
definite and firm conviction that a mistake has been
committed, it is to be expected that he will grant a new trial.

Charles Alan Wright, et al., Federal Practice and Procedure Civil 2d § 2806 (2d ed. 1995) (footnotes omitted).

B.

The law relating to the substantive claims which went to the jury is set forth in the jury instructions, to which there was no objection.  The instructions follow:

a. Seizure of the Shotgun

. . .the first claim is Mr. Schultz's 1983 claim. . . .This relates
to the shotgun.  Mr. Schultz filed this action in part under the
provisions of the United States Code of Laws entitled Title 42
Section 1983, which gives a person a right to bring a lawsuit
for a violation of a constitutional right by a police officer
acting in an official capacity.

. . .

. . .Mr. Schultz claims that Mr. Dockery violated his rights
under the Fourth Amendment to the United States
Constitution.  This amendment reads:

> The right of the people to be secure in their person,
> houses, papers and effects against unreasonable
> searches and seizures shall not be violated, and no
> warrant shall issue but upon probable cause
> supported by oath or affirmation particularly describing
> the place to be searched and the person or thing to be
> seized.

Every person has a constitutional right to be free from an unreasonable seizure of their property by a law enforcement agent. You must determine whether the seizure which you find took place was reasonable under constitutional standards of probable cause. It is for you to determine whether or not Mr. Dockery had probable cause to seize the shotgun.

### b. Malicious Prosecution

. . .the second claim that each of the plaintiffs has is malicious prosecution. The elements of a malicious prosecution claim are the following: A prosecution caused or continued by one person against another, termination of the proceeding in favor of the person who was prosecuted, absence of probable cause for initiating or continuing the proceeding -- initiating or continuing the proceeding with malice or the primary purpose other than that of bringing the offender to justice.

The plaintiff has the burden of proving each of the following: Mr. Dockery caused or continued a prosecution against the plaintiff, the proceeding was terminated in favor of the plaintiff, Mr. Dockery initiated or continued the proceeding without probable cause, Mr. Dockery initiated or continued a proceeding with malice or a primary purpose other than of bringing the offender to justice.

If you find the plaintiff has proved each of these elements as I have explained them to you, your verdict will be for the plaintiff on this [claim].

. . .if you find that, in effect, the proceeding terminated in favor of a plaintiff, then the plaintiff is to prevail on this claim. If Mr. Dockery had probable cause based on the facts and circumstances known to him at the time he initiated the proceeding and believed that the plaintiff was guilty of an offense – of the offense stated in the citation and if you believe that the citation for the reasons stated in it was proper, then the plaintiff cannot prevail on this claim.

### c. Tortious Interference

. . .Aureus claims that Dockery intentionally and improperly interfered with its business relationship or expectancy with its customers.  In order to establish this claim, Aureus has the burden of proving each of the following:  Aureus had a business relationship or expectancy with customers at the time of the claimed interference, the business relationship or expectancy had a reasonable likelihood of future economic benefit for Aureus, Dockery knew of the business relationship or expectancy at the time of the claimed interference, Dockery intentionally interfered with the business relationship or expectancy, Dockery improperly interfered with the business relationship or expectancy, Dockery's conduct caused the customers to disrupt or terminate the business relationship or expectancy, Aureus was damaged as a result of Dockery's conduct.

Your verdict will be for Aureus if you find that it has proved all of these elements.  Your verdict will be for Dockery if you find that Aureus has failed to prove any one of these elements.

The relationship or expectancy need not be evidenced by a contract, but there must be a realistic expectation.  The law requires more than wishful thinking, hope or optimism.  What is required is a reasonable likelihood or probability of future economic benefit for Aureus.

When I say that Aureus must prove that Dockery intentionally interfered with the business relationship or expectancy, I mean that Dockery's primary, but not necessarily sole, purpose was to interfere with Aureus' business relationship or expectancy or Dockery acted knowing that his conduct was certain or substantially certain to cause interference with Aureus' business relationship or expectancy.

Improper interference is conduct that is fraudulent, not lawful, not ethical or not justified under any circumstances.  If Dockery's conduct was lawful, it is still improper if it was done without justification and for the purpose of interfering with Aureus' business relationship or expectancy, but Aureus must specifically show affirmative acts by Dockery that corroborate that Dockery had the wrongful purpose of interfering with Aureus' business relationship or expectancy.

> A plaintiff must prove that the defendant caused the harm or injuries that it allegedly suffered. In determining the question of causation, you should decide whether Dockery's wrongful conduct was a substantial factor, and the resulting injury or harm need not be the only cause nor the last or nearest cause. It is sufficient if it occurs with some other cause acting at the same time which in combination with it causes the injury.

### d. Infliction of Emotional Distress and Equal Protection

The law relating to a claim for infliction of emotional distress and for a violation of equal protection will be discussed below as neither claim went to the jury.

### IV.

### A.

Two versions of the shotgun incident were presented to the jury, Shultz's and Dockery's. Dockery's version is discussed in the trial record at Trial Transcript, Vol 4, pages 37-40 and 69-70. The jury obviously gave more credence to Dockery's version of the events than Schultz's. The jury, in finding against Schultz, decided that Dockery had probable cause to take the shotgun given that Schultz declined to identify himself and to justify his ownership of the shotgun. Based on the evidence at trial, the Court accepts the findings of the jury that Schultz failed to establish by a preponderance of the evidence that the seizure of the shotgun violated his constitutional rights. Thus, Schultz is not entitled to a new trial on this ground.

### B.

As to the malicious prosecution claim of Schultz and of Aureus, while the record reflects a number of citations issued by Dockery for various violations of City of Detroit ordinances between May 27, 2001 and the end of the year to Aureus and Schultz.

7

However, a number of the citations were not issued to either Schultz or to Aureus. The reasons for the citations varied: disposal of waste oil, dumping, operating without a certificate of occupancy, etc. They are described in Exhibits 2 through 26. Nine (9) of the citations were dismissed without prejudice under a stipulation and order in the 36th District Court which reads:

> It is stipulated that the parties to the above captioned matters having agreed that if the property located at 17245 Mt. Elliott, Detroit, Michigan was remediated by the installation of storage tanks for the disposal of waste products then the above-captioned cases would be dismissed, and that said tanks having been installed it is the intention of the parties to dismiss the above-captioned matters.

There was no evidence at trial as to the disposition of fourteen (14) of the citations, and two (2) of the citations appeared not to have been served. The jury, based on the evidence at trial, had a basis to conclude that Dockery had reasonable cause to issue citations for the illegal disposal of waste oil which were the only citations recited in the stipulation and order. The jury could also reasonably have found that given Aureus' agreement to install storage tanks, that the proceedings in the 36th District Court did not terminate in favor of Schultz or Aureus. Again, based on the evidence at trial, the Court accepts the findings of the jury on the malicious prosecution claims of Schultz and Aureus. A new trial is not warranted on these claims.

C.

As to the tortious interference claim of Aureus, there was no evidence at trial that its relationship with its customers was adversely affected by the citations issued by Dockery, or that any activity by Dockery outside the issuance of the citations adversely affected Aureus' ability to do business. Additionally, the jury could reasonably have

8

found that Dockery's intention was not to interfere with Aureus' business relationships but rather to assure that the use of the scrap yard conformed to city ordinances and was environmentally sound. There was ample evidence at trial for the jury to find that the scrap yard was an environmental mess given the way it was being operated. As such, Aureus is not entitled to a new trial on this claim.

D.

Schultz says he is entitled to a new trial because of the failure of the Court to allow the jury to consider punitive damages on the shotgun claim. Given the fact that the jury did not find liability on the claim in the first instance and the Court having found no basis to order a new trial on this claim, the failure to give a punitive damages instruction, if any, is harmless.

E.

Aureus and Schultz further argue that the Court erred in withholding from the jury the claims of intentional infliction of emotional distress and negligent infliction of emotional distress. Although the Michigan Supreme Court has not formally recognized a claim for intentional infliction of emotional distress, the Michigan Court of Appeals has set forth the elements as follows: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. Lewis v. LeGrow, 258 Mich. App 175, 196 (2003). The elements of a negligent infliction of emotional distress claim are: (1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or

wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not present, at least shock "fairly contemporaneous" with the accident.  Hesse v. Ashland Oil, Inc., 466 Mich. 21, 34 (2002).

The Court did not err in withholding these claims from the jury.  First, whatever the shortfalls in Dockery's conduct, it cannot be said that it was extreme and outrageous based on the evidence.  Second, given that the jury found against Dockery on the shotgun and malicious prosecution claims, there was certainly insufficient evidence to go to the jury on a claim for negligent infliction of the emotional distress.  Moreover, as Dockery explains in its response, he is likely immune from such a claim.

F.

Finally, Aureus and Schultz argue that their equal protection claim should have gone to the jury.  Generally, equal protection claims involve members of a certain class alleging that they are being treated differently from members of another class.  See Shaw v. Reno, 509 U.S. 630 (1993).  However, the United States Supreme Court has upheld the "class of one" principle for equal protection claims by a citizen alleging unequal treatment by a state actor where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  Village of Willowbrook v. Olech, 528 U.S. 562 (2000).  See also Nicole Richter, Note, A Standard for "Class of One" Claims Under the Equal Protection Clause of the Fourteenth Amendment: Protecting Victims of Non-Class Based Discrimination from Vindictive State Action, 35 VAL. U. L. REV. 197 (2000-2001).

Here, neither Aureus nor Schultz introduced any evidence of a similarly situated entity (metal scrap yards or its managers) which was treated differently.  Because they

failed to produce evidence on an essential element, the claim was properly removed from the jury's consideration.

SO ORDERED.

                                          s/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE

Dated: September 5, 2007

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 5, 2007, by electronic and/or ordinary mail.

                                          s/Julie Owens
                                          Case Manager, (313) 234-5160